**Jon Garth MURRAY et al., Plaintiffs,**

**v.**

**Azie Taylor MORTON et al., Defendants.**

**Civ. A. No. 80–1475.**

United States District Court, District of Columbia.

Jan. 12, 1981.

Joel D. Joseph, Washington, D. C., for plaintiffs.

Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth, R. Craig Lawrence, Asst. U. S. Attys., Washington, D. C., for the United States, Congress, The Senate, The Senate defendants, and The Executive Department.

Stanley M. Brand, Gen. Counsel to the Clerk, Steven R. Ross, Asst. Counsel to the Clerk, U.S. House of Representatives, Washington, D. C., for Honorable Thomas P. O'Neill, Jr., Speaker, and The Honorable James D. Ford, Chaplain, United States House of Representatives.

Daniel J. Popeo, Gen. Counsel, Paul D. Kamenar, Director of Litigation, Jeffrey Hiller, Staff Atty., Washington Legal Foundation, Washington, D. C., for intervening defendants Senator Jesse Helms, et al.

MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiffs are two federal taxpayers and an organization, the Society of Separationists, most of whose members are taxpayers. None of the plaintiffs believes in any Supreme Being nor practices any religion. They sue the United States Congress, the United States Senate, the United States House of Representatives, together with several officers of each House including individual Senators, individual Congressmen, and the Chaplain of each House. Plaintiffs have also named as defendants the United States, the Treasurer of the United States and the Secretary of the Treasury. Plaintiffs claim that payment of salaries and certain expenses for the Chaplains of the Senate and the House of Representatives and the Acts of Congress authorizing and appropriating money for those expenditures violate the Establishment Clause of the First Amendment of the Constitution. They seek declaratory and injunctive relief. The complaint does not challenge the 200 year old practice of Congress appointing a Chaplain as an officer of each House. Nor does the complaint put at issue the traditional practice of a prayer by a Chaplain at the opening of each session of the Senate and of the House. The challenge is only to the payment of appropriated funds for these services.

The matter is before the Court on defendants' motions to dismiss and plaintiffs' motion for summary judgment. The Court will grant defendants' motions to dismiss because a taxpayer's action to bar the expenditure of funds for the services of Chaplains in the House and Senate is precluded by our Court of Appeals' decision in *Elliott v. White*, 23 F.2d 997 (D.C.Cir.1928)

(Charles H. Robb, J.) (cited with appreciation of the difficulty of the question "who may be heard to challenge such practices" as "invocational prayers in legislative chambers," in *Abington School District v. Schempp*, 374 U.S. 203, 299, 300, 83 S.Ct. 1560, 1612, 1613, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring)).

### II.

The issues posed by these plaintiffs and their complaint are not new to this Court, and their disposition is controlled by the results of those earlier proceedings. One of the same plaintiffs (who appears to be in privity with all the other plaintiffs) sued to enjoin the then President, the Chaplains of the Senate and the House, the Sergeants-at-Arms of each House and the Treasurer of the United States from, among other things, paying the salaries of the Chaplains. Another judge of this Court precluded and quashed service of process on the President named as a defendant and dismissed the action. *O'Hair v. Nixon, et al.*, Civil Action No. 410–73 (Dismissed March 21, 1973).

In *Elliott v. White*, our Court of Appeals had before it a similar suit brought by a taxpayer to prohibit the Treasurer of the United States from disbursing funds of the United States for salaries of the Chaplains of the Senate and House of Representatives, as well as of the Army and the Navy of the United States. On the authority of the then recent decision in *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), the Court of Appeals dismissed the complaint.

There has been great change in the Supreme Court's interpretation of standing and the related concepts of justiciability since *Frothingham*. The familiar landmarks in that change include the Supreme Court's decisions in *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) and *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). In *Flast* the Supreme Court recognized a taxpayer's standing to

sue to prevent an expenditure of appropriated funds for the benefit of the public in contravention of the Establishment Clause of the First Amendment. Decisions since *Flast* have left undisturbed the standing of a taxpayer to challenge expenditures for general public purposes in violation of the Establishment Clause. *Flast* and its progeny did not, however, resolve the interrelated questions of standing and justiciability with respect to a taxpayer's suit challenging the constitutionality of Congress' decisions and expenditures concerning its internal affairs.

A review of the leading cases brought to challenge the constitutionality of Congress' actions in managing its own affairs or dealing directly with citizens discloses that each plaintiff in those cases was either a member, an employee, or a person very directly affected by the Congressional activity. *See e. g., Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); *Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 49 S.Ct. 452, 73 L.Ed. 867 (1929); *Kilbourn v. Thompson*, 103 U.S. 168, 26 L.Ed. 377 (1881); *Consumers' Union of United States, Inc. v. Periodical Correspondence Ass'n.*, 515 F.2d 1341 (D.C.Cir.1975), *cert. denied*, 423 U.S. 1051, 96 S.Ct. 780, 46 L.Ed.2d 640 (1976). Neither the *Flast* line of cases relating to the standing of taxpayers to challenge official violations of the Constitution nor the decisions honoring complaints by individual Senators or Congressmen with respect to Congress' internal affairs authorize a court in this circuit to accord standing to a taxpayer challenging Congress' conduct of its internal affairs while *Elliot* remains intact.

The continuing vitality of *Elliott* in light of *Flast* is confirmed by the Supreme Court's requirement that courts honor a "textually demonstrable constitutional commitment . . . to a coordinate political department." *Powell v. McCormack*, 395 U.S. at 518, 89 S.Ct. at 1962 *quoting Baker v. Carr*, 369 U.S. at 217, 82 S.Ct. at 710. The text of the Constitution commits to Congress power to select its own officers, establish rules for its proceedings, and be free from judicial review of matters said and done by its officers in the course of those proceedings. Here, as defendants emphasize, Article I, Section 2, with respect to the House of Representatives, and Section 3, with respect to the Senate, provides that each "shall chuse their other Officers." Section 5 provides that

Each House may determine the Rules of its Proceedings.

And, of course, Section 6 provides that

[F]or any Speech or Debate in either House, they shall not be questioned in any other Place.[1]

This appreciation of *Elliott* is further reinforced by the Supreme Court's admonition to courts not to entertain a case where it would be impossible to undertake "independent resolution" of the question "without expressing lack of respect due coordinate branches of government." *Baker v. Carr*, 369 U.S. at 217, 82 S.Ct. at 710. *See Powell v. McCormack*, 395 U.S. at 548–549, 89 S.Ct. at 1978–79.

It might be that a court, presented with a taxpayer's complaint in a jurisdiction where the standing issue had not been previously considered by its Court of Appeals and by a colleague who had dismissed a similar complaint by one of the plaintiffs, could find the plaintiff entitled to sue and the case to be justiciable because a decision on the merits "would require no more than an interpretation of the Constitution." *Powell v. McCormack*, 395 U.S. at 548, 89 S.Ct. at

---

1. The complaint also makes an issue of the use of appropriated funds to publish each day's prayer in the Congressional Record for that date. The plaintiffs have not pressed this issue in their papers. In any event, Article I, Section 5 of the Constitution requires that:

Each House shall keep a Journal of its Proceedings and from time to time publish the same . . . .

This clause is such an absolute constitutional commitment of Congress' right to publish its proceedings, whatever they may be, as to foreclose justiciability of the publication claim even if plaintiff had pressed it.

1978. It might also be that if a Senator or Representative filed suit, a court could distinguish *Elliott v. White* and recognize standing to challenge the appropriation of funds for Chaplains, as well as the rules authorizing them to render religion-related services. Or, as Justice Brennan once observed, no one may have standing to challenge "invocational prayers in legislative chambers." *Abington School District v. Schempp,* 374 U.S. at 299, 83 S.Ct. 1560, 10 L.Ed.2d 844 (Brennan, J. concurring). It is noteworthy, however, that the Federal District Court for the District of Nebraska has recently accorded standing to a member of the Nebraska legislature. After trial on the merits, the Nebraska federal court ruled that, while the First Amendment is not breached by the appointment of a chaplain to say prayers at the beginning of each legislative session, payment of a salary to the legislature's chaplain violates the Establishment Clause. *Chambers v. March,* 504 F.Supp. 585 (D.Neb., 1980).

But in the circumstances here, the conclusion seems inescapable that it would be "impossible" for this Court, consistently with the respect which courts owe to coordinate branches of government and to each other, to undertake an "independent resolution" of the question of Congress' power to compensate its Chaplains, on this complaint of these particular taxpayers. *See Baker v. Carr,* 369 U.S. at 217, 82 S.Ct. at 710; *Powell v. McCormack,* 395 U.S. at 518, 548–549, 89 S.Ct. at 1978–79. Our Court of Appeals' decision in *Elliott,* unlike *Frothingham* on which it relied, dealt directly with the question now before this Court: the expenditure of public funds to compensate Chaplains. Implicit in that decision, and explicit here, is the assumption that no question was drawn as to the Chaplains, except compensation of them. A reading of *Elliott* in the context in which it was written and in the context of the authoritative decisions that have been rendered in the intervening years persuade the Court that none of these decisions undermines *Elliott's* continuing vitality, as respects a suit by a taxpayer to challenge an expenditure by or on behalf of Congress to pay one of its duly selected officers for performance of his assigned duties to Congress.

The taxpayer plaintiffs allege no interest, other than their views with respect to religion, to distinguish themselves or their personal stake in the outcome from that of any one of the population who pay taxes. They have no duty, indeed no occasion, to be present when the Chaplains perform their services in the House and Senate. They do not allege that they have been offended by, or even seen, the material allegedly circulated by the Chaplain of the Senate. This is not an action brought by a Senator, Congressman, or employee of the Senate or the House. *See e. g., Powell v. McCormack, supra; Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir.1974). Nor is it a complaint by one allegedly suffering from discrimination because of persistent employment of chaplains of one denomination rather than another. Accordingly, unless and until the Court of Appeals or the Supreme Court decides otherwise, this Court considers itself bound by *Elliott* to dismiss this complaint.